UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE ROYAL AHOLD N.V.            :
SECURITIES & ERISA LITIGATION     :
                                  :
                                  :   Civil No.:  1:03-MDL-01539
                                  :
                                  :

**Memorandum**

Now pending is the motion to compel filed by lead plaintiffs in this class action securities fraud case.[1] The issues have been fully briefed and oral argument was heard on July 13 and August 3, 2005. The plaintiffs seek to obtain notes and memoranda prepared by outside counsel reflecting witness interviews conducted by those counsel as part of an investigation requested by Royal Ahold and U.S. Foodservice ("USF") into various accounting irregularities and alleged fraud at the companies. Royal Ahold relies primarily on the protection afforded to opinion work product in arguing that it should not be required to produce the interview memoranda. It appears that a total of at least 827 interview memoranda exist, of which 558 have not been produced to any party. Approximately 269, therefore, have been disclosed to government agencies as more fully discussed below. Presumably most, if not all, of these 269 are relevant to the claims brought by the plaintiffs in this case; some of the 558 also may contain relevant information. A description of the circumstances under which the memoranda were created is necessary to explain my rulings. Familiarity with the facts set forth in my prior opinions, however, is presumed. *See generally In re Royal Ahold N.V. Securities & ERISA Litig.*, 351 F.Supp.2d 334

---

[1] The government's Motion for a Stay of Discovery with Respect to Witness Statements and Depositions Regarding U.S. Foodservice also is pending and has been discussed with counsel. Production of certain interview memoranda may be affected by that stay.

(D.Md. 2004).

The first question is whether the memoranda were created "because" of the prospect of litigation or whether there was another "driving force" behind the preparation of the requested documents. *See National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). Lead plaintiffs argue persuasively that the principal reason was to satisfy the requirement of Royal Ahold's outside accountants, who would not otherwise complete the work necessary to issue the company's audited 2002 financial statements. In turn, completion of the 2002 audit was critical to Royal Ahold's receipt of € 3.1 billion in financing.[2] Undoubtedly the company was also preparing for litigation, as the first class action was filed February 24, 2003, but the investigation would have been undertaken even without the prospect of preparing a defense to a civil suit. *See, e.g., In re Kidder, Peabody Securities Litig.*, 168 F.R.D. 459, 465 (S.D.N.Y. 1996) (finding that work product privilege did not apply to factual summaries of statements made by interviewees as part of an internal investigation by outside counsel because

---

[2]In support of these factual assertions plaintiffs offer the May 13, 2003 statement of Henny de Ruiter, Chairman of the Royal Ahold Supervisory Board, who explained to the shareholders that in response to the February 2003 lowering of projected earnings the company acted immediately: first, to ensure financial stability by obtaining an € 3.1 billion credit facility, and also by initiating internal investigations. He further explained that "The purpose of our internal investigations is to enable our accountants to resume their audit work as quickly as possible." (*See* Pls.' Reply Mem., Entwistle Aff., Ex A.) This purpose is confirmed by the February 27, 2003 letter from Deloitte & Touche to the Royal Ahold Audit Committee and the introductory paragraph of the June 27, 2003 report to the Audit Committee by the external auditors and attorneys retained by Royal Ahold to conduct an internal investigation "to address the concerns raised by Deloitte & Touche ... in its letter to the Audit Committee." (*See* July 22, 2005 Entwistle Aff. Ex. A and B; *see also* Ex C, letters and summaries regarding the internal investigation.) A similar statement is made in Royal Ahold's Form 20-F filed with the SEC, explaining that "D&T suspended its audit of our fiscal 2002 financial statements until the completion of necessary investigations." (*See* Royal Ahold and USF Mem. in Opp'n, Baumstein Decl., Ex. 2 at 65.)

the company "would have hired outside counsel to perform such an inquiry even if no litigation had been threatened at the time" given the magnitude and critical nature of the business crisis); *In re Leslie Fay Companies, Inc. Securities Litig.,* 161 F.R.D. 274, 281 (S.D.N.Y. 1995) (finding that "the internal Audit Committee investigation was not conducted *primarily* in anticipation of litigation," but rather for business reasons). Accordingly, at least for memoranda of interviews conducted for the purposes described above, Royal Ahold has not met its burden of demonstrating that the work product protection applies.

The second question is whether, even if the witness memoranda are entitled to work product protection, that protection has been waived. *See, e.g., Granite Partners L.P. v. Bear, Stearns & Co.,* 184 F.R.D. 49, 54-55 (S.D.N.Y. 1999) (even if investigative documents arguably were prepared for both business and litigation purposes, the work product privilege may be waived if the party seeking to assert the privilege has already used the contested documents "offensively" or in a way that implicitly waives the privilege). The plaintiffs present two grounds for finding waiver. First is the public disclosure of the results of the investigations; second is the actual production of the witness material to the Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC").

The public disclosure argument is consistent with the position that the driving force behind the internal investigations was not this litigation but rather the need to satisfy Royal Ahold's accountants, and thereby the SEC, financial institutions, and the investing public, that the identified "accounting" issues were being addressed and remedied. To this end, the information obtained from the witness interviews, and the conclusions expressed in the internal investigative reports, have largely been made public in the Form 20-F filed with the SEC by

3

Royal Ahold on October 16, 2003.  (*See* Royal Ahold and USF Mem. in Opp'n, Baumstein Decl., Ex 2.)   This document discusses in some detail the findings of fraud at USF, the improper consolidation of joint ventures, other accounting irregularities, and the steps the company has taken to address these issues.  In addition, several of the key investigative reports have been turned over to the lead plaintiffs.  Those reports rely heavily on and indeed in some instances quote from the witness interview memoranda. (*See* July 22, 2005 Entwistle Aff., Exs. B and C.)  Accordingly, testimonial use has been made of material that might otherwise be protected as work product.

In the Fourth Circuit, subject matter waiver applies to documents protected by the attorney-client privilege and to non-opinion work product; limited waiver is applied to opinion work product.  *See In re Martin Marietta Corp.,* 856 F.2d 619, 623 (4th Cir. 1988).  *See also United States ex. rel. Mayman v. Martin Marietta Corp.*, 886 F.Supp. 1243, 1252-53 (D.Md. 1995) (applying subject matter waiver to hold that the defendant company waived attorney-client privilege as to in-house legal memoranda when the company disclosed otherwise confidential advice on the same matter to the government).  By its public disclosures in the Form 20-F and the production of several of the internal reports to the plaintiffs, Royal Ahold has therefore waived the attorney-client privilege and non-opinion work product protection as to the subject matters discussed in the 20-F and the reports. The remaining question is whether the interview memoranda constitute opinion work product which may yet be protected. Defendants rely on *In re Allen*, 106 F.3d 582 (4th Cir. 1997) to assert on a blanket basis opinion work product protection for all the witness interview memoranda (approximately 827) created in the course of the various internal investigations.  *Id.* at 608 (holding that portions of an attorney's summary of

4

a witness interview were protected because they constituted opinion work product).  *See also Upjohn Co. v. U.S.,* 449 U.S. 383, 401-402, 101 S.Ct. 677 (1981) (holding that the attorney-client privilege protected interview notes prepared by in-house counsel during an internal investigation and noting special concern that witness memoranda may reveal an attorney's mental processes, but declining to state that such material is always protected by the work product doctrine).  The defendants read *Allen* too broadly, however, particularly in light of *Martin Marietta*, which was not overruled or even criticized by *Allen*.  *See Nutramax Laboratories, Inc. v. Twinmax Laboratories, Inc.,* 183 F.R.D. 458, 466-67 (D.Md. 1998) (observing that neither *Martin Marietta* nor *Allen* held there is absolute protection for opinion work product).

     I have reviewed *in camera* the typed memoranda of interviews of three potential witnesses with information relevant to the plaintiffs' case.[3] It appears to me that most of the contents are a fairly straightforward recitation of the information provided by the witness rather than a "pure mental impression" or legal theory of counsel.  *Martin Marietta* recognizes this distinction:  the court contrasted "marginal notes written by an attorney to convey his own mental impressions or thoughts, distinct from, for example, notes and memoranda summarizing interviews with employees concerning the audit." 856 F.2d at 625 n.1.  *Allen* is not to the contrary.  The two documents at issue in *Allen* were handwritten notes and a typed summary of an interview conducted by an attorney with a potential witness.   As to the notes, most had been produced; only "a portion of page 2" was claimed to be opinion work product.  106 F.3d at 607.

---

     [3]Those are Ernie Smith and Brian Spears, interviewed by White & Case attorneys on April 3, 2003 and February 26, 2003, respectively; and Edwin Vermeulen, interviewed by both White & Case attorneys and PriceWaterhouseCoopers auditors on May 22, 2003.

A redacted version of the typed summary also had been provided. The *Allen* court thus contemplated, and indeed performed, a specific analysis of the documents to determine whether production would reveal the attorney's "theories and opinions regarding this litigation." *Id.* at 607-08. Accordingly, relevant interview memoranda reflecting facts within the subject matter of the 20-F disclosures and the internal investigation reports are not necessarily protected. They must be produced to plaintiffs' counsel, except as to those portions Royal Ahold can specifically demonstrate would reveal counsel's mental impressions and legal theories concerning this litigation.

Finally, lead plaintiffs rely on the defendants' production of approximately 269 interview memoranda to both DOJ and the SEC, its potential adversaries, as a waiver as to the entirety of the documents under *Martin Marietta*. Royal Ahold and USF counter that the interview memoranda were disclosed to the government under the terms of an express confidentiality agreement that prohibited the government from disclosing the documents to any third party and stated that Royal Ahold had not waived, nor did it intend to waive, either the work product or the attorney-client privilege as to any third party. Admittedly *Martin Marietta* did not involve identical circumstances, as the company in that case had no confidentiality agreement with the government. Other circuits have disagreed on the extent to which a confidentiality agreement may protect against waiver. *Compare In re Columbia/HCA Healthcare Corp. Billing Practices Litig.,* 293 F.3d 289, 306-07 (6th Cir. 2002) (holding that confidentiality agreement with the government did not preserve company's work product or attorney-client privilege with respect to the documents disclosed to the government), *and Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1430 (3rd Cir. 1991) (finding that despite the existence of a

confidentiality agreement with two government agencies investigating allegations against it, the defendant company had waived both attorney-client and work product privilege as to all other adversaries seeking the information shared with the government), *with In re Steinhardt Partners*, *L.P.,* 9 F.3d 230, 236 (2nd Cir. 1993) (declining to adopt per se rule that all voluntary disclosures to the government waive work product protection).  The Fourth Circuit has not addressed this precise question, although in *In re Doe,* 662 F.2d 1073, 1081 (4th Cir. 1981), it explained that waiver of work product protection occurs in circumstances where the attorney "cannot reasonably expect to limit the future use of the otherwise protected material."

While in some circumstances a confidentiality agreement might be sufficient to protect opinion work product, in this case Royal Ahold already has disclosed information obtained from the witness interviews to the public in its Form 20-F filing with the SEC, and to the plaintiffs through the internal investigation reports.  Likewise, to the extent that Royal Ahold offensively has disclosed information pertaining to its internal investigation in order to improve its position with investors, financial institutions, and the regulatory agencies, it also implicitly has waived its right to assert work product privilege as to the underlying memoranda supporting its disclosures.  Finally, the language of the confidentiality agreements allows substantial discretion to the SEC and to the U.S. Attorney's office in disclosing any of the interview memoranda to other persons.[4]

---

[4]The SEC agreement stated: "the [SEC] will maintain the confidentiality of the Confidential Materials pursuant to this agreement, except to the extent that the Staff determines that disclosure is otherwise required by federal law or would be in furtherance of the Commission's discharging its duties and responsibilities.  Except as provided above, the Staff hereby agrees not to disclose the Confidential Materials to any third party."  Similarly, the DOJ "agree[d] to maintain the confidentiality of the privileged and Confidential Material ... and will not disclose the Subject Documents at any time, except (1) to the extent the Office, in its sole discretion, determines that disclosure is necessary to further its law enforcement objectives."  (*See* Royal Ahold and USF's Mem. in Opp'n at 7-8.)

Under all the circumstances, Royal Ahold has not taken steps to preserve the confidentiality of its opinion work product sufficient to protect the interview memoranda it already has disclosed to the government. These memoranda, if relevant to the claims in the amended consolidated complaint, must be turned over to plaintiffs in their entirety.

     A separate Order follows.


|  September 8, 2005  |  /s/  |
|---|---|
| Date | Catherine C. Blake |
|  | United States District Judge |