# TAB 4

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

-------------------------------------------------------------x

Civil No.: 1:03-MD-01539

IN RE ROYAL AHOLD N.V.
SECURITIES & ERISA LITIGATION                ALL SECURITIES ACTIONS


-------------------------------------------------------------x

## AFFIDAVIT OF SHERRIE R. SAVETT IN SUPPORT OF LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES FILED ON BEHALF OF BERGER& MONTAGUE, P.C.

COMMONWEALTH OF PENNSYLVANIA )
                                                      ): ss
COUNTY OF PHILADELPHIA                      )


SHERRIE R. SAVETT, being duly sworn, deposes and says:

1.        I am a managing principal and shareholder in the law firm of Berger & Montague,

P.C. ("Berger & Montague").  I submit this affidavit in support of Lead Counsel's application for

an award of attorneys' fees and reimbursement of expenses incurred in connection with services

rendered in this case from inception through May 12, 2006 (the "Contingent Fee Period").

2.        My firm represents the City of Philadelphia, Board of Pensions and Retirement,

one of the parties that originally filed a complaint and sought appointment as lead plaintiff in this

litigation.  My firm was selected by Lead Counsel and approved by Lead Plaintiffs to be one of a

limited number of law firms to assist in the prosecution of this litigation, and the majority of the

firm's effort was expended in discovery activities.  As part of these efforts, attorneys from this

firm spent months analyzing, reviewing and summarizing portions of the millions of pages of

documents produced by the defendants and non-parties.  We were able to review such documents

in electronic form over a secure internet connection that comprised part of the state-of-the-art

document review technology that Lead Counsel implemented in this litigation.  Attorneys from this firm communicated with Lead Counsel and other discovery team members on a regular basis.

3.      My firm also attended hearings before the Court; analyzed and participated in preparation of certain portions of the Consolidated Amended Securities Class Action Complaint (the "Complaint") filed on February 17, 2004; and analyzed and participated in responding to certain arguments raised in defendants' motions to dismiss the Complaint.

4.      The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by each attorney and paralegal of my firm who was involved in this litigation during the Contingent Fee Period, and the corresponding lodestar calculation based on my firm's current billing rate.  The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm, which are available at the request of the Court.  Time expended in preparing this application for fees and reimbursement of expenses and all related materials has not been included in my firm's lodestar calculation or in this request.

5.      The hourly rates for attorneys and paralegals in my firm included in Exhibit 1 are the regular current rates charged for their services in similar securities fraud matters.

6.      The total number of hours expended on this litigation by my firm during the Contingent Fee Period is 2,990.70 hours.  The total lodestar for my firm during the Contingent Fee Period is $1,287,049.50, consisting of $1,260,490.50 for attorneys' time and $26,559.00 for paralegals' time.

7.      My firm's lodestar figures are based upon the firm's billings rates, which rates do not include charges for expense items.  Expense items are billed separately, and such charges are not duplicated in my firm's billing rates.

8.     As detailed in Exhibit 2, my firm incurred a total of $12,370.78 in unreimbursed expenses in connection with this litigation during the Contingent Fee Period.

9.     The expenses incurred in this action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.  These records are available at the request of the Court.

10.    With respect to the standing of counsel in this case, attached hereto as Exhibit 3 is brief biography of my firm, which describes the experience of the firm in securities litigation and contains the biographies of the principal attorneys of the firm who worked on this litigation.

SHERRIE R. SAVETT

Sworn to before me this
3__ day of May, 2006

Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Nina L. Fischer, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires Apr. 2, 2009
Member, Pennsylvania Association of Notaries

# EXHIBIT 1

**FIRM: BERGER & MONTAGUE, P.C.**
**LODESTAR ANALYSIS FROM INCEPTION THROUGH MAY 12, 2006**

| PROFESSIONAL/STATUS* | TOTAL HOURS | HOURLY RATE | TOTAL LODESTAR |
|---|---|---|---|
| Sherrie R. Savett (P) | 85.50 | $650.00 | $55,575.00 |
| Daniel Berger (P) | 6.75 | $600.00 | $4,050.00 |
| Todd S. Collins (P) | 12.50 | $575.00 | $7,187.50 |
| Gary E. Cantor (P) | 31.80 | $550.00 | $17,490.00 |
| Barbara A. Podell (P) | 438.00 | $550.00 | $240,900.00 |
| Roslyn G. Pollack (A) | 620.20 | $550.00 | $341,110.00 |
| Lawrence Deutsch (P) | 2.60 | $460.00 | $1,196.00 |
| Phyllis M. Parker (A) | 174.80 | $410.00 | $71,668.00 |
| Douglas M. Risen (A) | 30.00 | $410.00 | $12,300.00 |
| Eugene R. Tompkins (CA) | 724.25 | $370.00 | $267,972.50 |
| Margaretta Kloos (CA) | 170.90 | $395.00 | $67,505.50 |
| Nancy Grogan (CA) | 127.50 | $350.00 | $44,625.00 |
| Shira Brezis (A) | 59.00 | $325.00 | $19,175.00 |
| Jon Lambiras (A) | 24.50 | $290.00 | $7,105.00 |
| Shoshana M. Twersky (A) | 353.90 | $290.00 | $102,631.00 |
| Nina L. Vernick (Senior PL) | 19.20 | $210.00 | $4,032.00 |
| P.V. Telang (Senior PL) | 51.00 | $210.00 | $10,710.00 |
| Mary Anne Rossi (Senior PL) | 1.30 | $210.00 | $273.00 |
| Sharon F. Davis (Senior PL) | 27.50 | $210.00 | $5,775.00 |
| Kimberly A. Walker (Senior PL) | 18.10 | $210.00 | $3,801.00 |
| Anne N. Ebbesen (PL) | 2.90 | $195.00 | $565.50 |
| Lauren Savett (PL) | 8.50 | $165.00 | $1,402.50 |
| **TOTAL** | **2990.70** | | **$1,287,049.50** |

*Partner (P), Associate (A), Contract Attorney (CA), Paralegal (PL)

**EXHIBIT 1**

# EXHIBIT 2

## FIRM:  BERGER & MONTAGUE, P.C.

### EXPENSE ANALYSIS FROM INCEPTION THROUGH MAY 12, 2006

| CATEGORY | TOTAL EXPENSES |
|---|---|
| Telephone; Facsimile | $445.04 |
| Travel | $1,424.54 |
| Reproduction | $3,939.50 |
| Commercial Copying & Printing | $390.27 |
| Postage | $38.14 |
| Delivery & Freight | $195.39 |
| Filing Fees | $25.00 |
| Lexis, Nexis, Westlaw | $5,912.90 |
| **TOTAL** | **$12,370.78** |

**EXHIBIT 2**

# EXHIBIT 3

# BERGER & MONTAGUE, P.C.

**EXHIBIT 3**

# BERGER & MONTAGUE, P.C.

## THE FIRM:

Berger & Montague has been engaged in the practice of complex and class action litigation from its Center City Philadelphia office for over 35 years. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of securities, antitrust, mass torts, and civil and human rights. In numerous precedent-setting cases, the Berger firm has played a principal or lead role. The firm has achieved the highest possible rating by its peers and opponents as reported in Martindale-Hubbell. Currently, the firm consists of 66 lawyers, approximately half of whom are engaged full-time in securities litigation; 18 paralegals; several professional investigators; and an experienced support staff.

Berger & Montague was founded in1970 by David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions. David Berger pioneered the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas, and has recovered billions of dollars for its clients. In complex litigation, particularly in areas of class action litigation, Berger & Montague has established new law and forged the path for recovery for victims of fraud and other wrongdoing.

The firm has been involved in a series of notable cases, some of them among the most important in the last 35 years of civil litigation. For example, the firm was one of the principal counsel for plaintiffs in the Drexel Burnham Lambert/Michael Milken securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of Drexel in the late 1980's. The firm was also among the principal counsel engaged in the trial of the Exxon Valdez Oil Spill in Anchorage, Alaska, a trial resulting in a record punitive damages award of $5 billion against Exxon. Berger & Montague was lead counsel in the School Asbestos Litigation, in which a national class of secondary and elementary schools recovered in excess of $300 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis.

2

In the area of securities litigation, the firm has represented public institutional investors - such as the retirement funds for the States of Pennsylvania, Connecticut, New Hampshire, New Jersey and Louisiana, as well as the City of Philadelphia and numerous individual investors and private institutional investors. The firm was co-lead counsel in the Melridge Securities Litigation in the Federal District Court in Oregon, in which an $88.2 million jury verdict was obtained. Berger and Montague has served as lead counsel in numerous other major class action cases, including those against Waste Management (settlement for investors of $220 million) and Rite Aid (settlements totalling $334 million), to name only two of the most notable successes.

In addition to its distinction in securities litigation, the firm has served as lead or co-lead counsel on many of the most significant civil antitrust cases over the last 30 years, including In re Corrugated Container Antitrust Litigation (recovery in excess of $366 million), the Infant Formula case (recovery of $125 million), and the Retail Drug price fixing case (settlement of more than $700 million). More recently, the firm, through its membership on the litigation Executive Committee, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War. The firm has also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

The *National Law Journal* in October, 2005 selected Berger & Montague as one of the 12 top plaintiffs' litigation firms in the U.S. based on its most recent performance and its track record of successes in the last 3-to-5 year period.

# PROMINENT JUDGMENTS AND SETTLEMENTS

The success of Berger & Montague in prosecuting class actions and other complex litigation is best demonstrated by the firm's significant results for its clients. The following is a partial list of some of the more notable judgments and settlements from the past few years:

## *Securities Litigation*

***In re Fleming Companies, Inc. Securities Litigation:*** The firm, as lead counsel, obtained a class settlement of $94 million for the benefit of the class. (Civil Action No. 5-03-MD-1530 (TJW) (E.D.Tex.)).

***In re Xcel Energy Inc. Securities, Derivative & "ERISA" Litigation:*** The firm, as co-lead counsel in the Securities Actions, obtained a cash settlement of $80 million on behalf of investors against Xcel Energy and certain of its officers and directors in 2005. (Civil Action No. 02-2677 (DSD/FLN) (D.Minn.)).

***In re Campbell Soup Co. Securities Litigation:*** The firm, as co-lead counsel, obtained a settlement of $35 million for the benefit of the class. (Civil Action No. 00 152 (JEI) (D.N.J.)).

***In re Premiere Technologies, Inc. Securities Litigation:*** The firm, as co-lead counsel, obtained a class settlement of over $20 million in combination of cash and common stock. (Civil Action No.1:98-CV-1804-JOF (N.D.Ga.)).

***In re: PSINet, Inc., Securities Litigation:*** The firm, as co-lead counsel, obtained a settlement of $17.83 million on behalf of investors. (Civ. No. 00-1850-A (E.D.Va.)).

***In re Safety Kleen Corp. Securities Litigation :*** The firm, as co-lead counsel, obtained a class settlement in the amount of $45 million against Safety-Kleen's outside accounting firm and certain of the Company's officers and directors. The final settlement was obtained 2 business days before the trial was to commence. (C.A. No. 3:00-CV-736-17 (D.S.C.)).

***Emil Rossdeutscher and Dennis Kelly v. Viacom:*** The firm, as lead counsel, obtained a settlement resulting in a fund of $14.25 million for the class (C.A. No. 98C-03-091 (JEB) (Sup. Ct. Del.)).

***Silver v. UICI:***   The firm, as co-lead counsel, obtained a settlement resulting in a fund of $16 million for the class. (No. 3:99 CV 2860-L (N.D. Tex.)).

***In re Alcatel Alsthom Securities Litigation:*** In 2001, the firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash.  (MDL Docket No. 1263 (PNB)).

***In re Rite Aid Corp.. Securities Litigation:*** The firm, as co-lead counsel, has obtained settlements totalling $334 million against Rite Aid's outside accounting firm and certain of the company's former officers (99 CV 1349 (E.D. Pa. 2001).

***In re Sunbeam Inc. Securities Litigation:*** As co-lead counsel, the firm obtained a settlement on behalf of investors of $141 million in the action against Sunbeam's outside accounting firm and Sunbeam's officers.   (98 CV 8258 (S.D. Fla. 2001)).

***In re Waste Management, Inc. Securities Litigation:***  In 1999, the firm, as co-lead counsel, obtained a class settlement for investors of $220 million cash which included a settlement against Waste Management's outside accountants.  (97CV 7709 (N.D. Il. 2000)).

***In re IKON Office Solutions Inc. Securities Litigation:*** The firm, serving as both co-lead and liaison counsel, obtained a cash settlement of $111 million in an action on behalf of investors against IKON and certain of its officers in 2000.  (MDL Dkt. No. 1318 (E.D. Pa. 2000)).

***In re Melridge Securities Litigation:*** The firm served as lead counsel and co-trial counsel for a class of purchasers of Melridge common stock and convertible debentures. A four-month jury trial yielded a verdict in plaintiffs' favor for $88.2 million, and judgment was entered on RICO claims against certain defendants for $239 million. The court approved settlements totaling $55.4 million.  (CV-87-1426FR (D. Or. 1998)).

***Walco Investments, Inc. et al. v. Kenneth Thenen, et al. (Premium Sales):*** The firm, as a member of the Plaintiffs' Steering Committee, obtained settlements of $141 million for investors victimized by a ponzi scheme.  (Reported at: 881 F. Supp. 1576 (S.D. Fla. 1995);168 F.R.D. 315 (S.D. Fla. 1996); 947 F. Supp. 491 (S.D. Fla. 1996)).

***In re The Drexel Burnham Lambert Group, Inc.:***  The firm was appointed co-counsel for a mandatory non-opt-out class consisting of all claimants who had filed billions of dollars in securities litigation-related proofs of claim against The Drexel Burnham Lambert Group, Inc. and/or its subsidiaries. Settlements in excess of $2.0 billion were approved in August 1991 and became effective upon consummation of Drexel's Plan of Reorganization on April 30, 1992. (90 Civ. 6954 (MP), Chapter 11, Case No. 90 B 10421 (FGC), Jointly Administered, reported at, *inter alia*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ("Drexel I") and 995 F.2d 1138 (2d Cir. 1993) ("Drexel II")).

***In re Michael Milken and Associates Securities Litigation:***  As court-appointed liaison counsel, the firm was one of four lead counsel who structured the $1.3 billion "global" settlement of all claims pending against Michael R. Milken, over 200 present and former officers and directors of Drexel Burnham Lambert, and more than 350 Drexel/Milken-related entities. (MDL Dkt. No. 924, M21-62-MP (S.D. N.Y.1993)).

***RJR Nabisco Securities Litigation:***  In this action, Berger & Montague represented individuals who sold RJR Nabisco securities prior to the announcement of a corporate change of control. This securities case settled for $72 million. (88 Civ. 7905 MBM (S.D. N.Y. 1992)).

## *Antitrust Litigation*

***In re High Fructose Corn Syrup:***  Berger & Montague was one of three co-lead counsel in this nationwide class action alleging a conspiracy to allocate volumes and customers and to price-fix among five producers of high fructose corn syrup.  After nine years of litigation, including four appeals, the case was settled on the eve of trial for $531 million.

***In re Linerboard Antitrust Litigation:***  Berger & Montague was one of a small group of court-appointed executive committee members who led this nationwide class action against producers of linerboard.  The complaint alleged that the defendants conspired to reduce production of linerboard in order to increase the price of linerboard and corrugated boxes made therefrom.  At the close of discovery, the case was settled for more than $200 million.

***In re Relafen Antitrust Litigation:***  Berger & Montague was one of a small group of firms who

6

prepared for the trial of this nationwide class action against GlaxoSmithKline, which was alleged to have used fraudulently-procured patents to block competitors from marketing less-expensive generic versions of its popular nonsteroidal anti-inflammatory drug, Relafen (nabumetone). Just before trial, the case was settled for $175 million. (No. 01-12239-WGY, D. Mass. 2003).

***State of Connecticut Tobacco Litigation:*** Berger & Montague was one of three firms to represent the State of Connecticut in a separate action in state court against the tobacco companies. The case was litigated separate from the coordinated nationwide actions. Although eventually Connecticut joined the national settlement, its counsel's contributions were recognized by being awarded the fifth largest award among the states from the fifty states' Strategic Contribution Fund.

***In re Graphite Electrodes Antitrust Litigation:*** Berger & Montague was one of the four co-lead counsel in a nationwide class action price-fixing case. The case eventually settled in excess of $130 million.

***In re Buspirone Antitrust Litigation:*** The firm served on the court-appointed steering committee in this class action, representing a class of primarily pharmaceutical wholesalers and resellers. The Buspirone class action alleged that pharmaceutical manufacturer BMS engaged in a pattern of illegal conduct surrounding its popular anti-anxiety medication, Buspar, namely, paying a competitor to refrain from marketing a generic version of Buspar; improperly listing a patent with the FDA; and wrongfully prosecuting patent infringement actions against generic competitors to Buspar. On April 11, 2003, the Court finally approved a $220 million settlement. (MDL No. 1410 (S.D.N.Y. 2003)).

***In re Cardizem CD Antitrust Litigation:*** Berger & Montague served on the Executive Committee of firms appointed to represent the class of direct purchasers of Cardizem CD. The suit charged that Aventis (the brand-name drug manufacturer of Cardizem CD) entered into an illegal agreement to pay Andrx (the maker of a generic substitute to Cardizem CD) millions of dollars to delay the entry of the less expensive generic product. On November 26, 2002, the district court approved a final settlement against both defendants for $110 million. (No. 99-MD-1278, MDL No. 1278 (E.D. Mich. 2002)).

7

***In re Brand Name Prescription Drugs Antitrust Litigation***:  The firm served as co-lead counsel
in this antitrust price-fixing class action on behalf of a class of purchasers of brand name
prescription drugs.  Following certification of the class by the district court, settlements
exceeded $717 million.  (No. 94 C 897 (M.D. Ill. 2000)).

**North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.:**  The firm was
one of several prosecuting an action complaining of Bristol Myers's use of invalid
patents to block competitors from marketing more affordable generic versions of its life-
saving cancer drug, Platinol (cisplatin).  The case settled for $50 million. (No.
1:04CV248 (EGS) (D. D.C. 2004))

***In re Catfish Antitrust Litig.***:   The firm was co-trial counsel in this action (by Mr. Twersky)
which settled with the last defendant a week before trial, for total settlements
approximating $27 million.  (No. 2:92CV073-D-O, MDL No. 928 (N.D. Miss. 1995)).

***In re Carbon Dioxide Antitrust Litigation:*** The firm was co-trial counsel in this antitrust class
action which settled with the last defendant days prior to trial for total settlements
approximating $53 million, plus injunctive relief.  (MDL No. 940 (M.D. Fla. 1995)).

***In re Infant Formula Antitrust Litigation***:  The firm served as co-lead counsel in an antitrust
class action where settlement was achieved two days prior to trial, bringing the total
settlement proceeds to $125 million.  (MDL No. 878 (N.D. Fla. 1992)).

***Red Eagle Resources Corp., Inc., v. Baker Hughes, Inc.:*** The firm was a member of the
plaintiffs' executive committee in this antitrust class action which yielded a settlement of
$52.5 million.  (C.A. No. H-91-627 (S.D. Tex. 1991)).

***In re Corrugated Container Antitrust Litigation:*** The firm, led by H. Laddie Montague, was
co-trial counsel in an antitrust class action which yielded a settlement of $366 million,
plus interest, following a trial. (MDL No. 310 (S.D. Tex. 1981)).

***Bogosian v. Gulf Oil Corp.:***  With Berger & Montague as sole lead counsel, this landmark
action on behalf of a national class of more than 100,000 gasoline dealers against 13
major oil companies lead to settlements of over $35 million plus equitable relief on the
eve of trial.  (No. 71-1137 (E.D. Pa. 1977)).

*In re Master Key Antitrust Litigation:* The firm served as co-lead counsel in antitrust class
   action that yielded a settlement of $21 million during trial. (MDL No. 45 (D. Conn.
   1977)).

### *Environmental/Mass Tort Litigation*

*In re Exxon Valdez Oil Spill Litigation*: On September 16, 1994, a jury trial of several months
   duration resulted in a record punitive damages award of $5 billion against the Exxon
   defendants as a consequence of one of the largest oil spills in U.S. history. David Berger
   was co-chair of the Plaintiffs' Discovery Committee (appointed by both the federal and
   state courts). H. Laddie Montague was specifically appointed by the federal court as
   one of the four designated trial counsel. Both Mr. Montague and Peter Kahana shared
   (with the entire trial team) in the 1995 "Trial Lawyer of the Year Award" given by the
   Trial Lawyers for Public Justice. (No. A89-0095-CVCHRH (D. Ala. 1996)).

*In re Ashland Oil Spill Litigation*: The firm served as co-lead counsel and obtained a $30
   million settlement for damages resulting from a very large oil spill. (Master File No. M-
   14670 (W.D. Pa. 1990)).

*In re School Asbestos Litigation*: As co-lead counsel, the firm successfully litigated a case in
   which a nationwide class of elementary and secondary schools and school districts
   suffering property damage as a result of asbestos in their buildings were provided relief.
   Pursuant to an approved settlement, the class received $70 million in cash and $145
   million in discounts toward replacement building materials. (No. 83-0268 (E.D. Pa.
   1986)).

### *Health Care/ERISA Litigation*

*In re Unisys Corp. Retiree Medical Benefits:* The firm, as co-lead counsel, handled the
   presentation of over 70 witnesses, 30 depositions, and over 700 trial exhibits in this
   action that has resulted in partial settlements of over $110 million for retirees whose
   health benefits were terminated. (MDL No. 969 (E.D. Pa.)).

*Local 56 U.F.C.W. v. Campbell Soup Co.*: The firm represented a class of retired Campbell
   Soup employees in an ERISA class action to preserve and restore retiree medical

benefits. A settlement yielded benefits to the class valued at $114.5 million. (No. 93-MC-276 (SSB) (D. N.J. 1984)).

### *Civil/Human Rights*

***In re Holocaust Victim Assets Litigation:***  Through Stephen A. Whinston's membership on the Executive Committee in cases brought by Holocaust survivors against the three largest Switzerland-based banks, this litigation was settled for $1.25 billion. (105 F. Supp.2d 139 (E.D. N.Y. 2000)).

***In re Nazi Era Cases Against German Defendants Litigation:***  Through the firm's co-lead counsel role, cases against German industry and banks for the use of slave and forced labor during the Nazi era were ultimately settled in the context of international negotiations which created a fund for victims of $4.5 billion. (198 F.R.D. 429 (D. N.J. 2000)).

### JUDICIAL PRAISE FOR BERGER & MONTAGUE ATTORNEYS

Berger & Montague's record of successful prosecution of class-actions and other complex litigation has been recognized and commended by judges and arbitrators across the country.  Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

### *Securities Litigation*

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "Thanks to the nimble class counsel, this sum, which once included securities worth $149.5 million is now all cash.  Seizing on an opportunity Rite Aid presented class counsel first renegotiated what had been stock consideration into Rite Aid Notes and then this year monetized those Notes.  Thus, on February 11, 2003, Rite Aid redeemed those Notes from the class, which then received $145,754,922.00.  The class also received $14,435,104 in interest on the Notes.

> Co-lead counsel ... here were extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the write down of over $1.6 billion in previously reported Rite Aid earnings.  In short, it would be hard to equal the skill class counsel demonstrated here."

> Praising the work of Berger & Montague attorneys including Securities Department Chair, Sherrie R. Savett and partners Carole Broderick and Robin Switzenbaum *In re Rite Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603 (E.D. Pa. 2003)

From **Judge Clarence C. Newcomer**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "...[C]ounsel has conducted this litigation with skill, professionalism and extraordinary efficiency."

11

Praising the work of Sherrie R. Savett, Securities Department Chair, and Arthur Stock, *In Re: Unisys Corporation Securities Litigation*, Civil Action No. 99-5333 (E.D. Pa. 1999).

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

"As to 'the skill and efficiency of the attorneys involved,' we can only echo what we said about some of the same lawyers in *U.S. Bioscience*. The results here are outstanding in a litigation that was far ahead of public agencies like the Securities and Exchange Commission and the United States Department of Justice. . . . At the same time, these attorneys have, through the division of their labors, represented the class most efficiently[.]"

Praising the work of Berger & Montague attorneys including Securities Department Chair, Sherrie R. Savett, in achieving settlements of over $190 million in ***In re Rite Aid Inc. Securities Litigation***, 146 F. Supp.2d 706 (E.D. Pa. June 8, 2001).

From **Judge Marvin Katz**, of the U.S. District Court for the Eastern District of Pennsylvania:

"Class counsel did a remarkable job in representing the class interests."

Commenting on the work of Berger & Montague attorneys Merrill G. Davidoff, Todd S. Collins and Douglas M. Risen, on the partial settlement for $111 million approved May, 2000, *In Re: IKON Offices Solutions Securities Litigation*, Civil Action No. 98-4286 (E.D. Pa. 2000).

From Judge **Wayne R. Andersen**, of the U.S. District Court for the Northern District of Illinois:

"...[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases...in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here ... I would say this has been the best representation that I have seen."

12

Praising the work of Sherrie R. Savett and Carole A. Broderick, in *In Re: Waste Management, Inc. Securities Litigation*, Civil Action No. 97-C 7709 (N.D. Ill. 1999).

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

"The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett . . . , and the arguments we had on the motion to dismiss [Mrs. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good as they come."

Commenting on the settlement of a securities case litigated by Sherrie R. Savett and Carole A. Broderick, *In re U.S. Bioscience Securities Litigation*, Civil Action No. 92-0678, (E.D. Pa. 1994).

From **Judge Joseph F. Anderson, Jr.**, of the U.S. District Court for the District of South Carolina:

"I don't have a problem at all approving the settlement. In light of what you've said today and your submission to the Court and I am familiar with the case ... it was a sharply litigated case, with good lawyers on both sides and I think it's an ideal case for settlement. It's the largest settlement I've been called upon to approve in my eight years as a judge."

Praising the work of Sherrie R. Savett, Securities Department Chair, in achieving a $32 million settlement in *In Re: Policy Management Systems Corporation,* Civil Action No. 3:93-0807-17 (D.S.C. 1993).

From **Judge Harry R. McCue**, of the U.S. District Court for the Southern District of California:

"There can be no doubt that the public good was fully served by the attorneys for the plaintiffs in this case, because they invested their own time, their own money, they invested their special skills and knowledge to vindicate the rights and interests of the thousands of

13

investors who invested their money and placed their trust in the integrity of the securities market. . . . I conclude that the achievement of plaintiffs' counsel under any of those tests was superior. "

Concerning the work of Berger & Montague in achieving a $33 million settlement in *In re Oak Securities Litigation*, 1986 U.S. Dist. LEXIS 20942 (S.D. Cal. 1986).

From **Judge John F. Keenan**, of the U.S. District Court for the Southern District of New York:

"The quality of work of plaintiffs' counsel on this case is also demonstrated by the efficient manner of prosecution. . . . At the settlement hearing, defense counsel conceded that plaintiffs' counsel constitute the 'cream of the plaintiffs' bar.' The court cannot find fault with that characterization."

Regarding the work of Sherrie R. Savett and Stephen A. Whinston, *In re Warner Communications Securities Litigation*, 618 F. Supp. 735 (S.D.N.Y. 1985).

### *Antitrust Litigation*

From **Judge Charles P. Kocoras**, of the U.S. District Court for the Northern District of Illinois:

"The stakes were high here, with the result that most matters of consequence were contested. There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled. The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary[.]"

Regarding the work of Berger & Montague shareholders H. Laddie Montague and Peter R. Kahana, among others, in achieving a more than $700 million settlement with some of the defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, *5-6 (N.D. Ill. February 9, 2000).

14

From **Judge Peter J. Messitte**, of the U.S. District Court for the District of Maryland:

> "The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

> Concerning the work of senior member, Merrill G. Davidoff, as stated in a Settlement Approval Hearing, Oct. 28, 1994. *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc.*, CA No. PJM-92-3624.

From **Judge Donald W. Van Artsdalen**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief  would, in and of itself, justify some upward adjustment of the lodestar figure."

> Commending the skills of firm chairman David Berger, shareholder Martin Twersky, and other Berger & Montague attorneys, in *Bogosian v. Gulf Oil Corp*, 621 F. Supp. 27 (E.D. Pa. 1985).

From **Judge Joseph Blumenfeld**, of the U.S. District Court of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

15

Referencing the leadership of managing partner H. Laddie Montague, co-lead counsel, in *In re Master Key Antitrust Litigation*, 1977 U.S. Dist LEXIS 12948 (Nov. 4, 1977).

### *Civil/Human Rights Cases*

From **Deputy Treasury Secretary Stuart E. Eizenstat**:

> "We must be frank. It was the American lawyers, through the lawsuits they brought in U.S. courts, who placed the long-forgotten wrongs by German companies during the Nazi era on the international agenda. It was their research and their work which highlighted these old injustices and forced us to confront them. Without question, we would not be here without them. . . . For this dedication and commitment to the victims, we should always be grateful to these lawyers."

> In his remarks at the July 17, 2000, signing ceremony for the international agreements which established the German Foundation to act as a funding vehicle for the payment of claims to Holocaust survivors. Among the lawyers specifically mentioned for special recognition were Stephen A. Whinston and Edward W. Millstein, both shareholders of the firm.

### *Customer/Broker Arbitrations*

**From Robert E. Conner**, Public Arbitrator with the National Association of Securities Dealers, Inc.:

> ". . . [H]aving participated over the last 17 years in 400 arbitrations and trials in various settings, . . . the professionalism and the detail and generally the civility of everyone involved has been not just a cause for commentary at the end of these proceedings but between ourselves [the arbitration panel] during the course of them, and . . . the detail and the intellectual rigor that went into the documents was fully reflective of the effort that was made in general. I wanted to make that known to everyone and to express my particular respect and admiration."

16

About the efforts of Berger & Montague shareholders Merrill G. Davidoff and Eric L. Cramer, who achieved a $1.1 million award for their client, in *Steinman v. LMP Hedge Fund, et al.*, NASD Case No. 98-04152, at Closing Argument, June 13, 2000.

# BIOGRAPHIES OF INDIVIDUAL ATTORNEYS

Set forth below are the biographies of the principal attorneys who worked on the *Royal Ahold* matter and who are individually listed on the chart attached to the accompanying Affidavit as Exhibit 1.

## Sherrie R. Savett

Ms. Savett received her B.A. degree from the University of Pennsylvania in 1970 (*summa cum laude*, Phi Beta Kappa) and her J.D. from the University of Pennsylvania Law School in 1973.  Ms. Savett has practiced in the area of securities litigation and complex consumer class actions with the firm of Berger & Montague for 30 years, where she is a managing principal and shareholder as well as Chair of the firm's Securities Litigation Department.  Ms. Savett is admitted to practice law in the Commonwealth of Pennsylvania and in numerous federal courts throughout the country.

Ms. Savett has served or serves as lead or co-lead counsel or as a member of the Executive Committee in a large number of important securities and consumer class actions in federal and state courts throughout the country, including securities actions against the following companies:

*Advanced Micro Devices* (class settlement of $11.5 million);
*Alcatel Alsthom* (class settlement of $75 million);
*BankAmerica* (derivative settlement of $39.25 million);
*Boston Chicken* (class settlement of $19.4 million);
*Bristol-Myers Squibb* (class settlement of $20 million);
*Cephalon* (class settlement of $17 million);
*Coastal Physician Group* (class settlement of $8.15 million);
*Crocker Bank* (class settlement of $35 million);
*Employee Solutions* (class settlement valued at $15 million);
*Fidelity/Micron* (class settlement of $10 million);
*Fleming Companies* (class settlement of $94 million);
*Genentech* (class settlement of $29 million);
*Global Crossing* (class settlement of $245 million (partial));
*Home Shopping Network* (class settlement of $18.2 million);
*Long Island Lighting* (class settlement of $48.5 million);
*Marconi* (class settlement of $7.1 million);
*Medaphis* (class settlement of $72.5 million);

***Deloitte & Touche*** (arising out of the Medaphis audit) (class settlement of $24 million);

***MicroWarehouse*** (class settlement valued at $30 million);

***Motorola*** (class settlement of $15 million);

***Oak Industries*** (class settlement in excess of $35 million);

***Plains All American Pipeline LP*** (class settlement of $24.1 million);

***Policy Management*** (class settlement of $32 million);

***Policy Management II*** (class settlement of $7.75 million);

***Public Service Company of New Mexico*** (class and derivative settlements of $33 million);

***Raychem*** (class settlement of $19.5 million);

***Rite Aid*** (class settlement of $334 million);

***Safety-Kleen*** (class settlement of $44.5 million achieved two days before trial);

***Shopko Stores*** (class settlement of $4.9 million);

***SmithKline Beckman*** (class settlement of $22 million);

***Sotheby's Holdings*** (class settlement of $70 million);

***Summit Technology*** (class settlement of $10 million);

***Sunrise Medical*** (class settlement of $20 million);

***Subaru*** (class settlement of $70 million);

***Synergen*** (class settlement of $28 million);

***U.S. Bioscience*** (class settlement valued at $15.25 million);

***United HealthCare*** (class settlement of $20.1 million);

***United Telecommunications*** (class settlement of $28 million);

***Valujet*** (class settlement of $5 million);

***W.R. Grace*** (derivative settlement of $8.5 million);

***Waste Management*** (class settlement of $220 million); and

**Xcel Energy** ($80 million).

Ms. Savett has advanced investor protection in helping to establish several significant precedents in her 30 years of practice. Among them is the holding (the first ever in a federal appellate court) that municipalities are subject to the antifraud provisions of SEC Rule 10b-5 under § 10(b) of the Securities Exchange Act of 1934, and that municipalities which issue bonds are not acting as an arm of the state and therefore are not entitled to immunity from suit in the federal courts under the Eleventh Amendment. *Sonnenfeld v. City and County of Denver*, 100 F.3d 744 (10th Cir.1996). In the *U.S. Bioscience* securities class action, a biotechnology case where critical discovery was needed from the federal Food and Drug Administration, the court ruled that the FDA may not automatically

19

assert its administrative privilege to block a subpoena and it may be subject to discovery depending on the facts of the case. *In re U.S. Bioscience Secur. Litig.*, 150 F.R.D. 80 (E.D. Pa. 1993).

Ms. Savett has lectured at the Wharton School of the University of Pennsylvania and at the Stanford Law School on prosecuting shareholder class actions. Ms. Savett served as a panelist at the First Circuit Judicial Conference in September 2003, and has also been on various ABA and PLI panels concerning securities class action litigation and the use of class actions in consumer litigation. Ms. Savett most recently served as a moderator/panelist at the Opal Public Funds Summit in January, 2005. She is the author of numerous papers on various aspects of securities and complex litigation, including: *Recent Developments in the Lead Plaintiff and Lead Counsel Provisions of the PSLRA,* 1 Secur. Litig. Rpt. (Glasser LegalWorks) (Dec. 2004-Jan. 2005); *Primary Liability of "Secondary" Actors Under The PSLRA*,1 SECUR. LITIG. RPT. (Glasser) (Nov. 2004); *The 'Indispensable Tool' of Shareholder Suits,* DIRECTORS & BOARDS, vol. 28 (Feb. 18, 2004); *Hurdles in Securities Class Actions: The Impact of Sarbanes-Oxley From a Plaintiff's Perspective*, 9 SECUR. LITIG. & REG. RPTR. (Andrews) (No. 16) (Dec. 23, 2003); and the series of annual reviews titled *Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective,* in 1442 PLI/Corp. 13 (Sept.-Oct. 2004); SJ084 ALI-ABA 399 (May 13-14, 2004); SG091 ALI-ABA (May 2-3, 2002); SF86 ALI-ABA 1023 (May 10, 2001); *Greetings From the Plaintiffs' Class Action Bar: We'll Be Watching*, SE082 ALI-ABA 739 (May 11, 2000); *Preventing Financial Fraud*, PLI B0-00E3 (Apr.-May 1999) and *Shareholders Class Actions in the Post Reform Act Era*, SD79ALI-ABA 893 (Apr. 30, 1999).

Earlier articles authored by Ms. Savett include: *What to Plead and How to Plead the Defendant's State of Mind in a Federal Securities Class Action* (with Arthur Stock), Practicing Law Institute, ALI/ABA-7239 (Nov. 1998)*; The Merits Matter Most: Observations On A Changing Landscape Under The Private Securities Litigation Reform Act of 1995*, 39 ARIZ. L. REV. 525 (1997); *Everything David Needs to Know to Battle Goliath*, ABA Tort & Insurance Practice Section, THE BRIEF, vol. 20, no. 3 (Spring 1991); *The Derivative Action: An Important Shareholder Vehicle for Insuring Corporate Accountability in Jeopardy,* PLI-H4-0528 (Sept. 1, 1987); and *Prosecution of Derivative Actions: A Plaintiff's Perspective,* PLI-H4-5003 (Sept. 1, 1986).

Ms. Savett was named as one of the "56 Women Leaders in the Profession" by *The Legal Intelligencer* and *Pennsylvania Law Weekly* in 2004. She was also selected a "Pennsylvania Top 50 Female Super Lawyer" in 2004 and 2005 and a "Pennsylvania Super Lawyer" in both 2004 and 2005 by *Philadelphia Magazine* after an extensive nomination and polling process among

Pennsylvania lawyers.  In 1999, Ms. Savett was named as one of the best lawyers in the Philadelphia region based upon a 4,000 lawyer annual survey by *Philadelphia Magazine.*

Ms. Savett has been active in community affairs.  She currently serves and has served for decades on the Board of Trustees of the Jewish Federation.  Ms. Savett is also on the Board of the National Liberty Museum and is Chairperson of the Southeastern Pennsylvania State of Israel Bonds.  In January, 2005, State of Israel Bonds awarded Ms. Savett The Spirit of Jerusalem Medallion.  Ms. Savett has been a member of the Board of Directors of the Philadelphia Chapter of the Weizman Institute, the American Jewish Committee and the Board of Trustees of the Philadelphia Bar Foundation.

### Barbara A. Podell

Barbara A. Podell, who joined the Berger firm as a shareholder in the Securities Group in early 2002, holds a Bachelor's degree from the University of Pennsylvania (B.A. 1972 *cum laude* with distinction in Art History). She attended the Institute of Fine Arts of New York University, and from1973 to 1975, and was a full-time faculty member at Temple University, Philadelphia, Pennsylvania, in the Department of Art History.  In 1978, Ms. Podell received a Juris Doctor degree (*magna cum laude*) from the Temple University School of Law, where she was one of the top nine students in the graduating class and was Editor-in-Chief of the Temple Law Quarterly (Volume 51). Prior to joining the Berger firm, Ms. Podell was a member of the firm of Savett Frutkin Podell & Ryan, P.C., and before that, a shareholder at Kohn, Savett, Klein & Graf, both in Philadelphia.

She is admitted to practice before the Supreme Court of Pennsylvania, the United States Court of Appeals for the Third Circuit, and the United States District Court for the Eastern District of Pennsylvania. She is a member of the American, Pennsylvania, and Philadelphia Bar Associations and has achieved an "AV" rating (the highest rating) in Martindale-Hubbell.

### Roslyn G. Pollack

Roslyn G. Pollack is Counsel to the firm, concentrating on securities, *qui tam*, and other complex civil litigation.  She was formerly a partner in the Litigation Department of the Philadelphia firm of Cohen, Shapiro, Polisher, Shiekman and Cohen where she specialized in commercial and corporate litigation.

21

Ms. Pollack also served as Associate General Counsel - Lead Attorney - Litigation for PECO Energy Company. She has tried cases in both the state and federal courts.

Ms. Pollack has lectured for the Pennsylvania Bar Institute and has written on a variety of legal topics. Active in a number of professional and civic organizations, she serves on the Commercial Panel of the American Arbitration Association and as a *judge pro tem* for the Philadelphia Court of Common Pleas. She is a member of the Forum of Executive Women.

Ms. Pollack is a graduate of the University of Florida, *magna cum laude*, and the University of Pennsylvania Law School. She is a member of the bar in both Pennsylvania and Florida.

### Phyllis Maza Parker

Phyllis Maza Parker is a graduate of Yeshiva University (B.A. *cum laude* 1969), Columbia University (M.A. French Literature 1971), Boston University, Brussels Belgium (M.S. in Management), and Temple University School of Law (J.D. *cum laude* 1995), where she was a member of the *Temple Law Review* and published a Note on the subject of the Federal Sentencing Guidelines. After her first year of law school, Ms. Parker interned with the Honorable Dolores K. Sloviter of the United States Court of Appeals for the Third Circuit. Following graduation from law school, Ms. Parker served as law clerk to the Honorable Murray C. Goldman of the Court of Common Pleas in Philadelphia, Pennsylvania. Since joining the Berger firm in September, 1996, Ms. Parker has been involved in various complex class action litigations, focusing primarily on securities class action litigation. She is admitted to practice in Pennsylvania and New Jersey as well as the Eastern District of Pennsylvania.

### Eugene R. Tompkins

Eugene R. Tompkins earned his law degree from Temple University's School of Law in 1987 and is admitted to practice in Pennsylvania, New Jersey and Delaware. He received his undergraduate degree in mechanical engineering from the United States Merchant Marine Academy. He also earned an MBA in international finance from New York University's Graduate School of Business Administration - Stern School. Mr. Tompkins has a broad experience base in complex litigation, class actions and derivative suits involving nuclear power plants, securities and anti-trust matters. He also has extensive experience in the international

22

energy market having held executive positions in the USA and abroad with major oil, gas and transportation companies.

## Shoshana Twersky

Shoshana Twersky received a B.A. from the University of Pennsylvania in 1999. She graduated from Temple Law School in 2003 and is admitted to practice law in Pennsylvania. Ms. Twersky is an associate in the securities department.

405178 –5/2/06

23