IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE ROYAL AHOLD N.V. | : | CIVIL NO. 03-MD-1539 |
| SECURITIES & ERISA LITIGATION | : | |
| | : | ALL SECURITIES ACTIONS |

...oOo...

## MEMORANDUM

On June 16, 2006, following a hearing, lead plaintiffs' motion for final approval of class certification, settlement, and plan of allocation was granted.  All objections as to those issues were denied.[1]  Lead plaintiffs' motion for approval of lead counsel's application for attorneys' fees, and the objections directed only to fees, were reserved for further consideration.

As reflected in the June 16, 2006 Order, lead plaintiffs obtained a $1.1 billion cash settlement in their securities fraud suit against Royal Ahold ("Ahold") and related defendants.[2] They seek attorneys' fees of $163,309,836.20, or 15% of the total minus certain expenses (Fee Application Fund).  This would be a 3.21 multiplier of the lodestar.  Whether this amount is reasonable depends on the application of various principles outlined in the Private Securities Litigation Reform Act ("PSLRA") and relevant case law.  For the reasons stated below, the court will award a fee of $130,647,868.95, which is 12% of the Fee Application Fund and represents a 2.57 multiplier of the lodestar.  Expenses in the full amount requested of $3,267,758.76 also will be awarded.[3]

---

[1] *See* Final Judgment and Order of Dismissal in all Securities Actions (docket entry no. 765).

[2] The settlement did not include Deloitte & Touche U.S. or Deloitte & Touche Netherlands.  A full discussion of the litigation is contained in prior published opinions, *see In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F.Supp.2d 334 (D. Md. 2004); 384 F.Supp.2d 838 (D. Md. 2005).

[3] The requested amount of expenses has not been challenged.

The PSLRA limits any award of attorneys' fees and expenses to "a reasonable percentage" of any recovery.[4]  The Act does not, however, prescribe a method of calculating the award or set any specific percentage that must be applied.  While the Fourth Circuit has not yet definitively addressed the issue, other district judges in this circuit have suggested a flexible analysis that uses the percentage of recovery method but applies the lodestar method as a cross-check, recognizing that "both are useful tools for trial courts to use to inform and calibrate a judgment as to a fair and reasonable PSLRA fee award."  *See In re Microstrategy, Inc., Sec. Litig.*, 172 F.Supp.2d 778, 787 (E.D. Va. 2001); *cf. Goldenberg v. Marriott Corp.*, 33 F.Supp.2d 434, 439 n.6 (D.Md. 1998).  This approach is followed by the Second Circuit.  *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *In re WorldCom Sec. Litig.*, 388 F.Supp.2d 319, 355 (S.D.N.Y. 2005).  As the court noted in *WorldCom,* "where the lodestar fee is used 'as a mere cross-check' to the percentage method of determining reasonable attorneys' fees, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'"  388 F.Supp.2d at 355 (quoting *Goldberger*, 209 F.3d at 50).

Under both methods, there are numerous factors that may be considered in determining a reasonable fee.  The Fourth Circuit adopted a 12-factor test in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).[5]  The terms of a retainer agreement negotiated, as it was in

---

[4] *See* 15 U.S.C. § 78u-4(a)(6).

[5] The factors include:

(1) time and labor expended;
(2) novelty and difficulty of the questions raised;
(3) skill required to properly perform the legal services;
(4) attorney's opportunity costs in pressing the litigation;
(5) customary fee for like work;

this case, between lead counsel and a sophisticated institutional investor designated as lead

plaintiff deserve some deference, *see In re WorldCom, Sec. Litig.*, 388 F.Supp.2d at 356; *In re*

*Cendant Corp. Litig.*, 264 F.3d 201, 282 (3rd Cir. 2001), although such terms are not dispositive,

*see Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123-24 (2d Cir. 2005).  Another

important principle is that the percentage awarded ordinarily should decrease as the amount of

the recovery rises, particularly in "mega-fund" cases where the recovery is above $100 million.

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001).

In this case, counsels' lodestar figure is $50,858,606.25, representing 147,896.05 hours

expended at various hourly rates.[6]  The retainer agreement permitted counsel to request 20% of

the settlement amount, but that was voluntarily reduced to the 15% now sought.  Counsel also

agreed not to request a fee on any interest the settlement fund earns, and not to seek fees for the

time spent after May 11, 2006, in effectuating the settlement, including distribution of the fund

to the class.  *Cf. In re Worldcom Sec. Litig.*, 388 F.Supp.2d at 354 n.50.

Objections to the attorneys' fees request were filed by John Pentz, Esq., purportedly on

behalf of plaintiff Linda Tsai (docket entry no. 722); and by United States Trust Company,

---

(6) attorney's expectations at the outset of litigation;
(7) time limitations imposed by the client or circumstances;
(8) amount in controversy and results obtained;
(9) experience, reputation, and ability of the attorney;
(10) undesirability of the case within the legal community in which the suit arose;
(11) nature and length of the professional relationship between the attorney and client;
(12) fee awards in similar cases.

[6] These hourly  rates, while somewhat high for this district, are within a reasonable range
for the national firms that prosecuted the case; *see In re Microstrategy, Inc., Sec. Litig.*, 172
F.Supp.2d at 788.  Moreover, by agreement with lead plaintiff COPERA, hourly rates were
capped at $595 even for partners who ordinarily bill at a higher rate.  C*f. In re WorldCom, Sec.
Litig.*, 388 F.Supp.2d at 354 n.50 (capping rates at 2004 levels).

National Association ("U.S. Trust") (docket entry no. 741).

Pentz is a professional and generally unsuccessful objector who apparently attached himself to Tsai; Tsai was represented by different counsel at the early stages of this litigation.[7] Her initial objections to the settlement, filed on March 29, 2006, complained that Ahold should pay more money to all class members, but did not mention the attorneys' fee request. The later objection, filed by Pentz on May 3, 2006, complained that U.S. investors should have received a greater share of the settlement[8] and that the attorneys' fee should be limited to the greater of 7.5% or a 2.3 multiplier of the lodestar. Pentz did not challenge the lodestar figure calculated by plaintiffs' counsel and provided no coherent explanation for his contention that the fee is excessive. In summary, the Pentz/Tsai objection was not well reasoned and was not helpful.

U.S. Trust, engaged as an independent fiduciary for the ERISA plans, did not object to the settlement amount or allocation but did urge a reduction in the amount of attorneys' fees. Its objection is based on a comparison of percentage awards in what U.S. Trust identifies as the ten largest securities class action settlements in the last few years. U.S. Trust contends that as settlement amounts increase, percentage fee recovery decreases, and that in all cases involving settlements of $1 billion or more (with one possible exception), the awards have been less than 10%.

Plaintiffs' counsel, responding to both sets of objections, selects a somewhat different range of comparative awards and emphasizes the need to review the particular facts of this

---

[7] Tsai unsuccessfully sought to be designated lead plaintiff; at that time, she was represented by Schiffrin & Barroway, LLP.

[8] The Tsai & Pentz objections to the settlement amount and allocation already have been denied.

4

litigation, relying heavily on the affidavits of Columbia University Law School Professor John C. Coffee, Jr.  I have carefully reviewed the charts of actual awards provided by both lead plaintiffs and U.S. Trust but will not repeat them here.  I agree with plaintiffs that the range of comparable settlements should include some below $1 billion as well as those few that substantially exceed $1 billion.[9]  Strictly on a percentage comparison approach, a 12% fee award appears to me a reasonable percentage of the class recovery.

Application of the *Barber* factors, some of which already have been addressed, also supports an award of this magnitude.  On the one hand, settlement was achieved well before trial, presumably aided by significant concessions about the fraud at U.S. Food Service and the existence of "side letters" related to the joint venture consolidation.  While some of the legal issues were familiar, others were more difficult and, at least as to subject-matter jurisdiction, novel in this Circuit.  While the case was not "undesirable," lead counsel was required to and did devote exceptional resources to the prosecution, facing some risk of non-recovery as the fee was entirely contingent under the retainer agreement with COPERA, and Royal Ahold's financial position was unclear.  The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district.  The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages.  The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.  Finally, plaintiffs' counsel were vigorous and

---

[9] I note that in *WorldCom,* a $3.55 billion subset of the total settlement resulted in attorneys' fees which reflected a percentage award of only 5.5%, but a lodestar multiplier of 4.0. 388 F.Supp.2d at 353-54.

5

extremely competent in their litigation against equally well-qualified defense firms.  When the

*Barber* factors are considered, together with the lodestar fee that has not been challenged, the

2.57 multiplier represented by a 12% percentage award is reasonable and fully justified.[10]

Accordingly, while the U.S. Trust objection was helpful in contributing to the discussion

of the percentage recovery approach, I do not agree with its apparent suggestion that 10% should

be the upper limit for any recovery over $1 billion.

A separate order stating the award follows.


  November 2, 2006                                                    /s/
              Date                                                Catherine C. Blake
                                                                  United States District Judge


---

[10] *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 742 (finding lodestar multiplier of 1.35 to 2.99 common in megafunds over $100 million); *In re Microstrategy, Inc., Sec. Litig.*, 172 F.Supp.2d at 790 (2.6 multiplier).