IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE ROYAL AHOLD N.V.                :
SECURITIES & ERISA LITIGATION         :   CIVIL NO. 1:03-MD-1539
                                      :
ALL SECURITIES ACTIONS                :
                            ...o0o...

## MEMORANDUM

Following an initial round of motions in this securities fraud multi-district litigation, on December 21, 2004 I granted motions to dismiss filed by Deloitte & Touche Accountants (Deloitte Netherlands") and Deloitte & Touche LLP ("Deloitte US"). *In re Royal Ahold N.V. Securities & ERISA Litig.*, 351 F.Supp.2d 334 (D. Md. 2004). The case proceeded through discovery and settlement of the claims against Royal Ahold and related defendants. (See Final Judgment and Order of Dismissal, June 16, 2006.)

While the initial motions were granted without leave to amend, no judgment was entered under Rule 54(b), and on March 6, 2006 the Lead Plaintiffs filed a motion to amend and a proposed Second Consolidated Amended Securities Class Action Complaint ("SAC") contending that additional facts obtained in discovery against the Ahold defendants allowed them to make additional allegations and thereby cure the deficiencies noted by the court as to the earlier consolidated amended complaint ("CAC"). Both Deloittes opposed the motion, which was fully briefed, and oral argument was heard December 19, 2006. For the reasons stated below, the motion to amend will be denied on the basis of futility, as the SAC would not withstand the Deloittes' motions to dismiss.[1]

Preliminarily, my opinion issued December 21, 2004 is incorporated by reference. The

---

[1] Accordingly, I am not reaching the alternative argument that granting leave to amend would be unduly prejudicial to the defendants.

facts and legal standards set forth in that opinion need not be repeated in full here. Lead Plaintiffs again attempt to state claims under §10(b) and Rule 10b-5 of the Exchange Act. The principal question is whether the SAC, considering the totality of the circumstances, adequately alleges a strong inference of scienter as required by the PSLRA, 15 U.S.C. § 78u-4(b)(1) & (b)(2). *Ottmann v. Hanger Orthopedic Group, Inc.*, 353 F.3d 338, 344 (4th Cir. 2003); *Royal Ahold*, 351 F.Supp.2d at 368-69; *see also In re Acterna Corp. Sec. Litig.*, 378 F.Supp.2d 561, 570-71 (D. Md. 2005). Scienter may be alleged by "pleading not only intentional misconduct but also recklessness," *Ottmann*, 353 F.3d at 344, and it is primarily this standard the plaintiffs contend they have satisfied.

Recently the Fourth Circuit clarified the heightened standard of pleading applicable under the PSLRA, explaining:

> Thus, while the Federal Rules generally allow a court, in ruling on a motion to dismiss under Rule 12(b)(6), to take into account *any set of facts that could be proved* consistent with the allegations of the complaint, even though such facts have not been alleged in the complaint, the PSLRA modifies this scheme (1) by requiring a plaintiff *to plead facts* to state a claim and (2) by authorizing the court to assume that the plaintiff has indeed stated *all* of the facts upon which he bases his allegation of a misrepresentation or omission. 15 U.S.C. § 78u-4(b)(1). The Act also requires a plaintiff to plead sufficient facts to raise a *strong inference* of scienter. *Id.* § 78u-4(b)(2).

*Teachers' Retirement System of Louisiana v. Hunter*, 477 F.3d 162, 172 (4th Cir. 2007).

There are two principal areas of alleged misconduct: knowingly permitting consolidation of the joint venture revenues and knowingly or recklessly failing to detect the promotional allowance fraud at USF. These will be discussed in turn.

First, as to the joint ventures, the "new" information relied on by Lead Plaintiffs is,

2

principally, that copies of the actual joint venture agreements, as well as the control and side letters, have been obtained, and that those agreements do not evidence control by Royal Ahold. I will assume the plaintiffs are correct that the agreements do not establish control of the joint ventures by Royal Ahold; that fact also was assumed, however, when the initial motions were evaluated. In light of those agreements, Deloitte U.S. insisted on other written evidence of control, threatening to force a restatement if that evidence was not provided. (SAC ¶¶ 146-154). Ultimately letters were produced not only stating Ahold's "interpretation" that its decision would be final in case of a failure to agree but also containing the signatures of representatives of the other venture partners agreeing with that interpretation.[2] The existence of contemporaneous "side" letters negating that interpretation was concealed from Deloitte US and from Deloitte Netherlands, which issued the opinions on Ahold's 20-F's.

     Lead plaintiffs now argue that the side letters are irrelevant, because the control letters were insufficient to establish control; if that were clear, however, there would have been no reason for the side letters to be created. Similarly, as noted in my earlier opinion, "if Deloitte were complicit in the joint venture fraud, . . . there would be no reason for the Royal Ahold executives to conceal the side letters from the Deloitte defendants." 351 F.Supp.2d at 395. Once Deloitte discovered the existence of the "side" letters, restatement was required. (SAC ¶¶ 188 & n.21, 194). Deloitte's somewhat reluctant willingness to tolerate Ahold's delay in providing third-party confirmation of management's representations may not be commendable, but neither

---

[2] The exception was JMR, but the small amount of any financial misstatement resulting from the consolidation of JMR was not material. 351 F.Supp.2d at 395-96.

does it rise to the level of recklessness required to state a claim under the PSLRA.[3]

Regarding the promotional allowance fraud at USF, Lead Plaintiffs have proposed some additional factual allegations based on documents and deposition transcripts cited in the SAC. These were reviewed in the parties' memoranda and, to some extent, at oral argument. Also since the filing of the original CAC, however, some 16 independent food brokers and employees of major food vendors have pled guilty in connection with the fraud at USF. (D&T Acct. Surreply, at 6 n.7).[4] In September 2006, USF's former Chief Financial Officer Michael Resnick pled guilty to conspiracy to falsify the books and records of USF and Royal Ahold. In November 2006, USF's former Chief Marketing Officer Mark Kaiser was convicted by a jury of similar conspiracy charges and securities fraud.

Without repeating the lengthy analysis of my earlier opinion, I will address the principal points relied on Lead Plaintiffs in their recent briefing and oral argument.

First, the SAC refers to USF's use of "VASPs", separate companies related to USF's cost-plus customers, but VASPs are not inherently fraudulent entities and it does not appear that Deloitte U.S. ignored their existence. (SAC ¶¶ 240-247). "Confirm" requests were sent to numerous other recipients in addition to the VASPs, and the fact that VASP officers apparently lied in response to such requests simply illustrates the extent of USF's fraudulent scheme.

Second, it is clear that the existence of written agreements and prepayments was largely concealed by USF. The isolated and inconspicuous reference in KPMG's 1999 workpapers

---

[3] The Osnoss January 25, 2001 email (SAC ¶ 11) recognizes but does not surrender to the pressure being generated by a valuable client. *(See also* SAC ¶¶ 147-49).

[4] SEC enforcement actions have been filed against thirty individuals for signing and returning materially false credit confirmations. (Katz letter 3/9/07, Exhibits).

about a single "prepay" (SAC ¶¶ 224-25; Tr. 12/19/06 at 17) is hardly sufficient to raise an alert, and management's representations about a lack of contracts and prepayments logically supports the need for independent confirmations, which Deloitte attempted to obtain.

Third, the SAC's allegations about what Ernie Smith must have told Deloitte US concerning "fraud" at USF (SAC ¶¶ 14(vi); 270-284) are not significantly distinguishable from the circumstances analyzed in my prior opinion, *see* 351 F.Supp.2d at 387-88, to warrant a different result.[5] Specifically, the White & Case memo detailing an interview with Ernie Smith (Katz Aff. Ex. 35) contains no statement that Smith sent his April 12, 2001 memo to Deloitte. The handwritten notes from April 24 and 25, 2001, do reference an evening call to David Herskovits of Deloitte US, but with no explanation of what was said; the emphasis is on communications with Meurs of Royal Ahold (which had already happened) and Tobin of Ahold USA. (Katz Aff. Ex. 37, JM 01428, 01435). Both the April 12, 2001 memo and the notes also reflect Smith's belief that the USF balance sheet is "relatively clean today." (Katz Aff. Ex. 35 at ES 10001; *see also* Katz Aff. Ex. 37, JM 01433; Katz Aff. Ex. 39, DT-USF0087598.01).

Fourth, while Van Cleave's language in the initial draft of the internal audit report was softened, (SAC ¶¶ 260-61) the revised language continued to state the essential point, that the internal auditors had been unable to obtain certain documents related to promotional allowances and unable to achieve specific testing objectives. (Katz Aff. Ex. 43 at DT-USF0104025-27). Turning the draft over to the USF director of internal audit to issue (SAC ¶ 266) has not been shown "reckless", and in any event the concern regarding inadequate internal controls was frequently expressed by Deloitte in other communications to Ahold.

---

[5] I am not making a Rule 11 ruling.

The key fact unaltered by Lead Plaintiffs' new allegations remains that Deloitte, despite having been repeatedly lied to by senior USF officers and employee, eventually discovered the fraudulent scheme, in which numerous independent brokers and third-party employees also were complicit, as a result of issuing a substantial number of "confirms" testing management's representations about the promotional allowances at USF.  Carefully considered, the SAC, like the CAC, does not allege facts demonstrating that "the accounting practices were so deficient that the audit amounted to no audit at all or that . . . no reasonable accountant would have made the same decisions if confronted with the same facts." *Royal Ahold*, 351 F.Supp.2d at 385 (*quoting Zucker v. Sasaki*, 963 F.Supp. 301, 307 (S.D.N.Y. 1997)).  Accordingly, the motion to amend will be denied.

A separate order follows.

| | |
|---|---|
| June 18, 2007 | /s/ |
| Date | Catherine C. Blake |
| | United States District Judge |

6